| | |
|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION, as Trustee, for the Benefit of the Holders of B2R Mortgage Trust 2015-2 Mortgage Pass-Through Certificates, | Case No.: _____26-cv-01322_____ |
| Plaintiff, | Hon: _____ |
| vs. | |
| BSD 2, LLC, a Delaware limited liability company, AMIT STERN, an individual, ASSAF N. COHEN, an individual, and MICHAEL ISRAELI, an individual, SUREKA LEVETTE DAVIS, an individual, CITY OF SAINT PAUL, MINNESOTA, CITY OF MILWAUKEE, WISCONSIN, FORD CONSUMER FINANCE COMPANY, INC., a corporation, or its unknown successors and assigns, EDUCATORS CREDIT UNION, a Wisconsin credit union, | |
| Defendants. | |

## COMPLAINT

Plaintiff Wilmington Trust, National Association, as Trustee, on behalf of the Registered Holders of B2R Mortgage Trust 2015-2 Mortgage Pass-Through Certificates ("Plaintiff" or "Lender"), acting in this matter by and through its duly appointed special servicer, Midland Loan Services, a division of PNC Bank, N.A., pursuant to that certain Pooling and Servicing Agreement dated as of November 1, 2015 ("Midland"), by and through undersigned counsel, alleges as follows for its Verified Complaint against Defendants BSD 2, LLC, Amit Stern, Assaf N. Cohen, Michael Israeli, Sureka Levette Davis, City of Saint Paul, Minnesota, City of Milwaukee, Wisconsin, Ford Consumer Finance, Inc., or its unknown successors and assigns, and Educators Credit Union:

## NATURE OF THIS ACTION

1.      This action arises out of Borrower's (as defined herein) breach of the terms and conditions contained within the applicable Loan Documents (as defined herein) securing repayment of a commercial real estate loan in the amount of $1,708,500.00, which was originally secured by twenty-eight (28) real properties located in Milwaukee, Wisconsin, Saint Paul, Minnesota, and Minneapolis, Minnesota. In addition to Borrower executing a Promissory Note, Guarantors Amit Stern, Assaf N. Cohen, and Michael Israeli also executed a Guaranty guaranteeing the payment and performance of Borrower's obligations. The remaining defendants are included in this action solely as a result of any interest they may hold in the Mortgaged Property (as defined herein).

## THE PARTIES

2.      Plaintiff is a duly authorized national banking association organized and existing under the laws of the United States, acting as trustee for a trust that has elected to be treated as a real estate mortgage investment conduit trust under the Internal Revenue Code of 1986, with its designated main office located at 1100 North Market Street, Wilmington, Delaware 19890.

3.      Defendant BSD 2, LLC ("Borrower") is a Delaware limited liability company with its principal place of business located at 29 West 17th Street, New York, New York 10011, which owns and operates the real property securing the Loan, as more particularly described herein.

4.      As Borrower is a limited liability company, its citizenship is determined by that of its members. San Holdings LLC, a New York limited liability company ("San Holdings"), owns fifty (50%) percent of the member interests in Borrower. Atrium Residence LLC, a New York limited liability company ("Atrium Residence"), owns the remaining fifty (50%) member interests in Borrower.

5.	San Holdings has two members: Guarantor Amit Stern, who is an individual citizen of the State of New York; and Guarantor Assaf N. Cohen, who is also an individual citizen of the State of New York.

6.	Likewise, Atrium Residence also has two members: Guarantor Michael Israeli, who is an individual citizen of the State of New York; and Yael Agraman Israeli, who is also an individual citizen of the State of New York.

7.	Borrower is, therefore, a citizen of the State of New York due to the underlying citizenship of its members.

8.	Upon information and belief, Defendant Amit Stern ("Stern") is a natural person who resides at 630 W 256th St., Bronx, New York 10471. Stern is named as a party defendant herein because he is a Guarantor of certain of the Borrower's obligations to Plaintiff, pursuant to the Guaranty dated August 14, 2015 and as more particularly described herein.

9.	Upon information and belief, Defendant Assaf N. Cohen ("Cohen") is a natural person who resides at 74 Long Lane, Levittown, New York 11756. Cohen is named as a party defendant herein because he is the Guarantor of certain of the Borrower's obligations to Plaintiff, pursuant to the Guaranty dated August 14, 2015 and as more particularly described herein.

10.	Upon information and belief, Defendant Michael Israeli ("Israeli[1]") is a natural person who resides at 5 Rockaway Place, Massapequa, New York 11758. Israeli is named as a party defendant herein because he is the Guarantor of certain of the Borrower's obligations to Plaintiff, pursuant to the Guaranty dated August 14, 2015 and as more particularly described herein.

11.	Upon information and belief, Defendant Sureka Levette Davis ("Davis") is a

---

[1] Together, Stern, Cohen, and Israeli may be referred to collectively herein as the "Guarantors."

natural person who resides at 3725 S 76th St., Apt. 4, Milwaukee, Wisconsin 53220. Davis is named as a party defendant herein because of a judgment she obtained against the Milwaukee Property (defined below) in the amount of $2,758.58 in the case *Sureka Levette Davis v. BSD2 LLC,* Case No. 2019SC042173, before the Civil Division of the Milwaukee County Circuit Court.

12. Defendant City of Saint Paul, Minnesota ("Saint Paul") is a municipal corporation with an address located at Saint Paul City Hall, 15 Kellogg Blvd. West, Saint Paul, Minnesota 55102. The City of Saint Paul is made a defendant herein so that any interest it may claim can be adjudicated and foreclosed

13. Defendant City of Milwaukee, Wisconsin ("Milwaukee") is a municipal corporation with an address located at Milwaukee City Hall, 200 E Wells St, Milwaukee, Wisconsin 53202. The City of Milwaukee is made a defendant herein so that any interest it may claim can be adjudicated and foreclosed.

14. Upon information and belief, Defendant Ford Consumer Finance Company, Inc. ("Ford") claims or may claim an interest in a portion of the Milwaukee Property by virtue of that certain Mortgage dated July 16, 1996 and recorded on September 9, 1996 as Document No. 7262486 in the Milwaukee County Register of Deeds. Ford is made a defendant herein so that any interest it may claim can be adjudicated and foreclosed.

15. Upon information and belief, Defendant Educators Credit Union ("Educators") claims or may claim an interest in a portion of the Milwaukee Property by virtue of that certain Mortgage dated May 17, 2012 and recorded on May 29, 2012 as Document No. 10121458 in the Milwaukee County Register of Deeds. Educators is made a defendant herein so that any interest it may claim can be adjudicated and foreclosed.

16. Plaintiff brings this action to, *inter alia*, foreclose upon those certain Mortgages (as

further defined herein), in the original aggregate principal amount of $1,708,500.00 that is secured by, *inter alia*, the Mortgaged Property and for the appointment of a receiver who is authorized to manage the Mortgaged Property during the pendency of this foreclosure action.

17. At all times material, Borrower is and has been the owner/operator of the Mortgaged Property.

18. At all times material, the Guarantors have been the owners, operators, representatives, Members, and Managers of the Borrower. *See* Loan Agreement, Schedule IV.

## JURISDICTION AND VENUE

19. Based on the foregoing, this Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a) because, as noted above, complete diversity of citizenship exists between Plaintiff, on the one hand, and Defendants, on the other, and because the amount in controversy exceeds $75,000.00, exclusive of interest, costs, and fees.

20. Based on the facts set forth more fully below, venue is proper before United States District Court for the Eastern District of Wisconsin, Milwaukee Division because a substantial portion of the Mortgaged Property is situated in this District. 28 U.S.C. § 1391(b)(2).

21. Moreover, pursuant to 28 U.S.C. § 754, this Court can, upon appointment of a receiver and the completion of certain requirements by that receiver, obtain constructive in rem jurisdiction over property located in other districts; namely, those portions of the Mortgaged Property located in Ramsey County, Minnesota. 28 U.S.C. § 754.

## FACTUAL ALLEGATIONS

**A. The Loan and the Loan Documents**

22. Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if set forth at length herein.

23. On or about August 14, 2015, Plaintiff's predecessor-in-interest, B2R Finance L.P.

Case 2:26-cv-01322    Filed 07/29/26    Page 5 of 38    Document 1

("Original Lender"), made a loan to Borrower in the original principal amount of $1,708,500.00 (the "Loan"), evidenced by that certain Loan Agreement ("Loan Agreement") between Borrower and Original Lender dated August 14, 2015. A true and accurate copy of the Loan Agreement is attached hereto as **Exhibit A**, and its terms are expressly incorporated herein by reference.

24. The Loan is evidenced by that certain Promissory Note also dated August 14, 2015, in the principal amount of $1,708,500.00 and executed by the Borrower in favor of the Original Lender (the "Note"). A true and correct copy of the Note is attached hereto as **Exhibit B**, and its terms are expressly incorporated herein by reference.

25. As collateral security for the payment of the Debt, on or about August 14, 2015, the Borrower executed and delivered to the Original Lender that certain Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated August 14, 2015 and recorded on August 28, 2015, as Document Number 10494327 in the Recorder's Office of Milwaukee County, Wisconsin (the "Milwaukee Mortgage"). The Milwaukee Mortgage encumbers certain real and personal property located at various addresses in Milwaukee County, Wisconsin. A true and correct copy of the Milwaukee Mortgage is attached hereto as **Exhibit C-1**, and its terms are expressly incorporated herein by reference.

26. The Milwaukee Mortgage presently encumbers the following properties:

a) 2415 North 54th Street, Milwaukee, Milwaukee County, Wisconsin 53220 (Parcel No. 329-1629-3);

b) 2515 North 58th Street, Milwaukee, Milwaukee County, Wisconsin 53210 (Parcel No. 329-0744-0);

c) 2573 North 60th Street, Milwaukee, Milwaukee County, Wisconsin 53210 (Parcel No. 330-1232-6);

d) 3760 South 21st Street, Milwaukee, Milwaukee County, Wisconsin 53221 (Parcel No. 552-1275-9);

e) 4106 West Fairmount Avenue, Milwaukee, Milwaukee County, Wisconsin 53218 (Parcel No. 208-0195-1);

-6-

f) 4261 North 48th Street, Milwaukee, Milwaukee County, Wisconsin 53216 (Parcel No. 248-0156-100-0);

g) 4356 North 16th Street, Milwaukee, Milwaukee County, Wisconsin 53209 (Parcel No. 244-9964-1);

h) 4457 West Leon Terrace, Milwaukee, Milwaukee County, Wisconsin 53216 (Parcel No. 267-0121-9);

i) 4514 North 46th Street, Milwaukee, Milwaukee County, Wisconsin 53218 (Parcel No. 228-1242);

j) 4728 West Garfield Avenue, Milwaukee, Milwaukee County, Wisconsin 53208 (Parcel No. 347-0314-0);

k) 4731 North 48th Street, Milwaukee, Milwaukee County, Wisconsin 53218 (Parcel No. 228-0188-100-2);

l) 5076 North 24th Place, Milwaukee, Milwaukee County, Wisconsin 53209 (Parcel No. 206-0817-7);

m) 5223 West Silver Spring Drive, Milwaukee, Milwaukee County, Wisconsin 53218 (Parcel No. 1909881-100-4)'

n) 5325 North 62nd Street, Milwaukee, Milwaukee County, Wisconsin 53218 (Parcel No. 189-0180-2);

o) 5708 North 56th Street, Milwaukee, Milwaukee County, Wisconsin 53218 (Parcel No. 173-0053-1);

p) 5747 North 40th Street, Milwaukee, Milwaukee County, Wisconsin 53209 (Parcel No. 171-0421-7);

q) 5868 North 66th Street, Milwaukee, Milwaukee County, Wisconsin 53218 (Parcel No. 174-0625-8);

r) 7019 West Tallmadge Court, Milwaukee, Milwaukee County, Wisconsin 53218 (Parcel No. 188-0649-4); and

s) 4813 West Luscher Avenue #32, Milwaukee, Milwaukee County, Wisconsin 53218 (Parcel No. 209-0278-X), and as more fully described on Exhibit A thereto (collectively, the "Milwaukee Property").

27. The Loan is also secured by, among other things, an additional Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing also dated August 14, 2015, made by Borrower in favor of Original Lender, and recorded on October 18, 2015 as Document Number 4579620 in the Recorder's Office of Ramsey County, Minnesota (the "Ramsey Mortgage"). The Ramsey Mortgage encumbers certain real and personal property located at various addresses in Ramsey County, Minnesota. A true and correct copy of the Ramsey Mortgage

-7-

is attached hereto as Exhibit C-2, and its terms are expressly incorporated herein by reference.

28.     Subsequently, several properties were released from Ramsey Mortgage. The released properties are located at:

a)  188 Acker Steet East, Saint Paul, Ramsey County, Minnesota 55117 (Parcel No. 30.29.22.43.0116);

b)  543 Van Buren Avenue, Saint Paul, Ramsey County, Minnesota 55103 (Parcel No. 36.29.23.22.0227);

c)  617 Greenbrier Street, Units 1-2, Saint Paul, Ramsey County, Minnesota 55106 (Parcel No. 32.29.2212.0011);

d)  811 York Avenue, Saint Paul, Ramsey County, Minnesota 55106 (Parcel No. 29-29-22-41-0107);

e)  140 Isabel Street East, Saint Paul, Ramsey County, Minnesota 55107 (Parcel No. 08-28-22-21-0041);

f)  241 Front Avenue, Saint Paul, Ramsey County, Minnesota 55117 (Parcel No. 25-29-23-14-0131); and

g)  598 Western Avenue, Saint Paul, Ramsey County, Minnesota 55103 (Parcel No. 36.29-.23.13.0044), and as more fully described on Exhibit A thereto.

29.     Accordingly, the Ramsey Mortgage presently encumbers only the real property more commonly known as 1103 Beech Street, Saint Paul, Ramsey County, Minnesota 55106 (Parcel No. 33.29.22.12.0053) (the "Ramsey Property").

30.     Finally, the Loan is also secured by, among other things, an additional Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing also dated August 14, 2015, made by Borrower in favor of Original Lender (the "Hennepin Mortgage"). The Hennepin Mortgage encumbers certain real and personal property located at 4623 Dupont Avenue North, Minneapolis, Hennepin County, Minnesota 55412 (Parcel No. 12-118-21-33-0026), and as more fully described on Exhibit A thereto (the "Hennepin Property"). A true and correct copy of the Hennepin Mortgage is attached hereto as **Exhibit C-3**, and its terms are expressly incorporated herein by reference.

31.     Subsequent to the execution of the Hennepin Mortgage, the Hennepin Property was

release pursuant to the knowledge and approval of Lender.

32. The Milwaukee Mortgage, Ramsey Mortgage, and Hennepin Mortgage are collectively referred to herein as the "Mortgages," although only the Milwaukee Mortgage and Ramsey Mortgage presently encumber the Mortgaged Property.

33. The Milwaukee Property and Ramsey Property are collectively referred to herein as the "Mortgaged Property."

34. In addition to being a real property mortgage, each of the Mortgages grants a security interest in favor of the holder of the Mortgages in certain real and personal property described therein (collectively, the "Collateral"). Exs. C-1, C-2, and C-3 at §§ 1.01 and 1.03.

35. Each of the Mortgages also contains a present, absolute, and unconditional assignment to Lender of all Borrower's right, title and interest in and to all current and future Leases, Rents, Lease Guaranties and Bankruptcy Claims (each, an "Assignment of Rent"). Exs. C-1, C-2, and C-3 at § 1.02.

36. To induce the Original Lender to make the Loan, and as further security for the payment of the Debt, on or about December 21, 2015, the Guarantors executed and delivered to the Original Lender a Guaranty (the "Guaranty"). A true and correct copy of the Guaranty is attached hereto as **Exhibit D**, and its terms are expressly incorporated herein by reference.

37. Pursuant to the Guaranty, the Guarantors irrevocably and unconditionally guaranteed the payment and performance of the Guaranteed Obligations, as that term is defined in the Guaranty, as and when due. Ex. D, Section 1.1. The Guarantors are liable for the Guaranteed Obligations, and the "Guaranty is an irrevocable, absolute, unconditional, continuing guaranty of payment and performance and not merely a guaranty of collection." *Id.* at Section 1.3. In addition, the Guarantors are required to pay Plaintiff's legal fees and other costs and expenses incurred in

enforcing the Guaranty. *Id*. at Section 1.8.

38.     To further perfect its security interest in the Collateral, the Original Lender filed and duly recorded **UCC-1 Financing Statements** as set forth below:

a)  A UCC-1 Financing Statement was filed and duly recorded with the Milwaukee County, Wisconsin Register of Deeds on September 22, 2015 as Document No. 10501134 (the "Milwaukee UCC Statement"). A true and correct copy of the Milwaukee UCC Statement is attached hereto as **Exhibit E-1**, and its terms are expressly incorporated herein by reference.

b)  A UCC-1 Financing Statement was filed and duly recorded with the Ramsey County, Minnesota Recorder's Office on January 6, 2016 as Document No. 4590428 (the "Ramsey UCC Statement"). A true and correct copy of the Ramsey UCC Statement is attached hereto as **Exhibit E-2**, and its terms are expressly incorporated herein by reference.

39.     The Loan, Note, the Mortgages, and the Guaranty, as well as all other documents that evidence, secure, or relate to the Borrower's payment of the Loan, are collectively referenced herein as the "Loan Documents."

40.     Midland is the Special Servicer of the Loan and attorney-in-fact on behalf of Plaintiff, and in such capacities has the right to enforce the Loan Documents and to initiate, prosecute, and maintain this action Plaintiff's behalf.

41.     As the Lender has released the Hennepin Property from the liens of the Mortgages, the Hennepin Mortgage no longer encumbers any property in Hennepin County, Minnesota.

**B.   Assignment of the Loan Documents to Plaintiff**

42.     Pursuant to the General Assignment and Assumption dated August 14, 2015 (the "Assignment"), Original Lender granted, sold, transferred, delivered, set-over, and conveyed all right, title, and interest in, to and under, or arising out of the Loan, the Note, the Guaranty, the Mortgages, the Loan Documents, and all assignment and pledges, modifications and amendments thereto to B2R Repo Seller 2 L.P. A true and accurate copy of the Assignment is attached hereto as **Exhibit F**, and its terms are expressly incorporated herein by reference.

43. In addition, the Original Lender further transferred, assigned, granted and conveyed all of its right, title and interest in and to the Mortgages to B2R Repo Seller 2 L.P., pursuant to the Assignments of Security Instrument identified below:

a) The Assignment of Security Instrument dated August 14, 2015 (the "Milwaukee Mortgage Assignment") and recorded with the Milwaukee County, Wisconsin Register of Deeds as Document No. 10501133 on September 22, 2015. A true and accurate copy of the Milwaukee Mortgage Assignment is attached hereto as **Exhibit G-1**, and its terms are expressly incorporated herein by reference.

b) The Assignment of Security Instrument dated August 14, 2015 (the "Ramsey Mortgage Assignment") and recorded with the Ramsey County, Minnesota Recorder as Document No. 4590427 on December 10, 2015. A true and accurate copy of the Ramsey Mortgage Assignment is attached hereto as **Exhibit G-2**, and its terms are expressly incorporated herein by reference.

44. Thereafter, B2R Repo Seller 2 L.P. further transferred, assigned, granted and conveyed all of its right, title and interest in and to the Mortgages back to the Original Lender, pursuant to the Assignments of Security Instrument identified below:

a) The Assignment of Security Instrument dated August 14, 2015 (the "Milwaukee Mortgage Assignment II") and recorded with the Milwaukee County, Wisconsin Register of Deeds as Document No. 10529085 on December 31, 2015. A true and accurate copy of the Milwaukee Mortgage Assignment is attached hereto as **Exhibit H-1**, and its terms are expressly incorporated herein by reference.

b) The Assignment of Security Instrument dated November 24, 2015 (the "Ramsey Mortgage Assignment II") and recorded with the Ramsey County, Minnesota Recorder as Document No. 4592243 on January 20, 2016. A true and accurate copy of the Ramsey Mortgage Assignment is attached hereto as **Exhibit H-2**, and its terms are expressly incorporated herein by reference.

45. Finally, the Original Lender then transferred, assigned, granted and conveyed all of its right, title and interest in and to the Mortgages to Plaintiff, pursuant to the Assignments of Security Instrument identified below:

a) The Assignment of Mortgage dated August 14, 2015 (the "Milwaukee Mortgage Assignment III") and recorded with the Milwaukee County, Wisconsin Register of Deeds as Document No. 10529086 on December 31,

-11-

2015. A true and accurate copy of the Milwaukee Mortgage Assignment is attached hereto as **Exhibit I-1**, and its terms are expressly incorporated herein by reference.[2]

b) The Assignment of Mortgage dated November 24, 2015 (the "Ramsey Mortgage Assignment III") and recorded with the Ramsey County, Minnesota Recorder as Document No. 4592244 on January 20, 2016. A true and accurate copy of the Ramsey Mortgage Assignment is attached hereto as **Exhibit I-2**, and its terms are expressly incorporated herein by reference.[3]

46. The Original Lender also filed and recorded several UCC Amendments, which assigned its prior security interest in the Collateral to B2R Repo Seller 2 L.P., as set forth below:

a) A UCC Financing Statement Amendment recorded with the Milwaukee County, Wisconsin Register of Deeds on October 15, 2015, as Document No. 10507781 (the "Milwaukee County UCC Amendment"). A true and correct copy of the Milwaukee County UCC Amendment is attached hereto as **Exhibit K-1**, and its terms are expressly incorporated herein by reference.

b) A UCC Financing Statement Amendment recorded with the Ramsey County, Minnesota Recorder on January 21, 2016, as Document No. 4592516 (the "Ramsey County UCC Amendment"). A true and correct copy of the Ramsey County UCC Amendment is attached hereto as **Exhibit K-2**, and its terms are expressly incorporated herein by reference.

47. Thereafter, B2R Repo Seller 2 L.P. then filed and recorded several UCC Amendments, which assigned its prior security interest in the Collateral back to Original Lender, as set forth below:

a) A UCC Financing Statement Amendment recorded with the Milwaukee County, Wisconsin Register of Deeds on January 14, 2016, as Document No. 10532477 (the "Milwaukee County UCC Amendment II"). A true and correct copy of the Milwaukee County UCC Amendment II is attached hereto as **Exhibit L-1**, and its terms are expressly incorporated herein by reference.

b) A UCC Financing Statement Amendment recorded with the Ramsey County,

---

[2] On January 20, 2017, the Original Lender recorded a Corrective Assignment with the Milwaukee County, Wisconsin Register of Deeds as Document No. 10642405 (the "Milwaukee Corrective Assignment") in order to correct the notary block for the Milwaukee Mortgage Assignment III but all other aspects of the Milwaukee Assignment III remained the same in the Milwaukee Corrective Assignment. See **Exhibit J-1**.

[3] On January 24, 2017, the Original Lender recorded a Corrective Assignment with the Ramsey County, Minnesota Recorder's Office as Document No. 4643896 (the "Ramsey Corrective Assignment") in order to correct the notary block for the Ramsey Mortgage Assignment III but all other aspects of the Ramsey Assignment III remained the same in the Ramsey Corrective Assignment. See **Exhibit J-2**.

-12-

Minnesota Recorder on April 22, 2016, as Document No. 4603640 (the "Ramsey County UCC Amendment II"). A true and correct copy of the Ramsey County UCC Amendment II is attached hereto as **Exhibit L-2**, and its terms are expressly incorporated herein by reference.

48. The Original Lender then filed and recorded several UCC Amendments, which assigned its prior security interest in the Collateral to the Plaintiff, as set forth below:

a) A UCC Financing Statement Amendment recorded with the Milwaukee County, Wisconsin Register of Deeds on January 14, 2016, as Document No. 10532478 (the "Milwaukee County UCC Amendment III"). A true and correct copy of the Milwaukee County UCC Amendment III is attached hereto as **Exhibit M-1**, and its terms are expressly incorporated herein by reference.

b) A UCC Financing Statement Amendment recorded with the Ramsey County, Minnesota Recorder on April 26, 2016, as Document No. 4603835 (the "Ramsey County UCC Amendment III"). A true and correct copy of the Ramsey County UCC Amendment III is attached hereto as **Exhibit M-2**, and its terms are expressly incorporated herein by reference.

49. Thereafter, Plaintiff filed and duly recorded certain UCC Continuation Statements as set forth below:

a) UCC continuation statements were filed and recorded with the Milwaukee County, Wisconsin Register of Deeds on April 22, 2020, as Document No. 10971336 (attached hereto as **Exhibit N-1**) and again on March 28, 2025 as Document No. 11494747 (attached hereto as **Exhibit N-2**).

b) UCC continuation statements were filed and recorded with the Ramsey County, Minnesota Recorder on July 22, 2020, as Document No. 4823271 (attached hereto as **Exhibit O-1**), on May 15, 2024, as Document No. 5025443 (attached hereto as **Exhibit O-2**), on March 13, 2025, as Document No. 5058391 (attached as **Exhibit O-3**), and again on July 28, 2025, as Document No. 5073563 (attached as **Exhibit O-4**).

50. Plaintiff is the current owner and holder of the Note, Mortgages, and Loan Documents, and is entitled to enforce the same.

## C. Cash Management Provisions Under the Loan Documents

51. The Mortgages grant Lender a present and absolute assignment of all leases, rents, and income derived from the Mortgaged Property (collectively, the "Rents") as additional

-13-

collateral securing the obligations under the Loan Documents. Ex. C-1, C-2, and C-3 at Sections 1.01(h) and 1.02.

52.     Notwithstanding such absolute assignment, the Loan Documents grant Borrower a limited, revocable license to collect and use the Rents, subject to the terms and conditions set forth therein. *Id.* at Section 1.02(a).

53.     Pursuant to the express terms of the Mortgages and the other Loan Documents, Borrower's license to collect and use the Rents is automatically revocable by Lender upon the occurrence and continuation of an Event of Default. *Id.* at Section 7.01(h).

54.     Upon the occurrence and continuation of an Event of Default, Lender is entitled to enforce its assignment of Rents and exercise cash management rights, including, without limitation:

    a) revoking Borrower's license to collect, receive, and use the Rents;

    b) directing tenants and other parties obligated under leases to remit all Rents directly to Lender or its designee;

    c) collecting and applying all Rents to the payment of the Debt and other obligations under the Loan Documents; and

    d) otherwise taking possession and control of the income stream generated by the Mortgaged Property.

55.     The Loan Documents further provide that, upon the occurrence and continuation of an Event of Default, Lender is entitled to seek the appointment of a receiver to take possession of the Mortgaged Property, collect the Rents, and manage the Mortgaged Property for the benefit of Lender, without regard to the adequacy of the security or the solvency of Borrower. Exs. C-1, C-2, and C-3 at Section 7.01(g).

56.     As set forth below, multiple Events of Default have occurred and are continuing under the Loan Documents, thereby triggering Lender's rights to enforce the assignment of Rents

-14-

and implement cash management controls with respect to the Mortgaged Property and all income derived therefrom.

**D.   Events of Default Under the Loan Documents**

57.   The Loan Agreement, Mortgages, and other Loan Documents require Borrower to, among other things, (a) make timely monthly payments of principal and interest, and (b) maintain insurance coverage on the Mortgaged Property in accordance with the terms and conditions set forth therein.

58.   Borrower was and is required to make monthly payments of principal and interest in the amount of the Monthly Debt Service Payment on each Payment Date (the "Monthly Debt Service Payments"). Ex. A at Section 1.3.1.

59.   Beginning in or about November 2025, and continuing thereafter through the date hereof, Borrower has failed to make one or more Monthly Debt Service Payments when due.

60.   Borrower's failure to make such required payments constitutes an Event of Default under the Loan Documents (the "Monetary Defaults").

61.   The Loan Documents further require Borrower to maintain insurance coverage for the Mortgaged Property, including keeping all required policies in full force and effect and timely paying all premiums (the "Insurance Requirements"). Ex. A at Section 4.1(a).

62.   Beginning in or about November 2024, Borrower failed to comply with the Insurance Requirements, including by failing to maintain the required insurance coverage for the Mortgaged Property.

63.   As a result of Borrower's failure to maintain the required insurance coverage, Lender, in order to protect its collateral, obtained force-placed insurance coverage for the Mortgaged Property in or about November 2024.

64.   Borrower's failure to comply with the Insurance Requirements constitutes a

-15-

separate Event of Default under the Loan Documents (the "Insurance Default," and together with the Monetary Defaults, Reimbursement Default, Reserve Defaults, Tax Defaults, Reporting Defaults, Municipal and Water Defaults, and Judgment Defaults, the "Events of Default").

65.     On or about November 25, 2024, Borrower was advised of the Insurance Default when Lender issued a Notice of Event of Default and Force Placement of Insurance ("Notice of Force Placement"). A true and accurate copy of the Notice of Force Placement is attached hereto as **Exhibit P**, and its terms are expressly incorporated herein by reference.

66.     The Loan Documents permit Lender, upon Borrower's failure to maintain required insurance coverage, to obtain insurance coverage for the Mortgaged Property and advance sums necessary to protect its interest in the Mortgaged Property, which sums become part of the Debt and are payable by Borrower upon demand.

67.     As alleged above, Lender obtained force-placed insurance coverage for the Mortgaged Property in or about November 2024 as a result of Borrower's failure to comply with the Insurance Requirements.

68.     Borrower has failed to reimburse Lender for the costs, premiums, and expenses associated with such force-placed insurance, the exact amount of which will be proven at trial.

69.     Borrower's failure to reimburse Lender for such protective advances constitutes an additional and independent Event of Default under the Loan Documents (the "Reimbursement Default").

70.     The Loan Documents further require Borrower to make ongoing deposits into various reserve accounts, including, without limitation, reserves for taxes, insurance, and capital expenditures (collectively, the "Reserve Requirements"). Ex. A at Section 7.1

71.     Upon information and belief, beginning in or about November 2025, Borrower

-16-

failed to make required deposits into one or more reserve accounts in accordance with the Loan Documents.

72. Borrower's failure to satisfy the Reserve Requirements constitutes an additional Event of Default under the Loan Documents (the "Reserve Defaults").

73. The Loan Documents require Borrower to timely pay all real estate taxes, assessments, and other charges affecting the Mortgaged Property prior to delinquency.

74. Upon information and belief, Borrower has failed to timely pay certain real estate taxes and/or other charges affecting the Mortgaged Property.

75. Any such failure to pay taxes or other charges when due constitutes an additional Event of Default under the Loan Documents (the "Tax Defaults").

76. The Loan Documents require Borrower to provide periodic financial reporting, including rent rolls and other operational and financial information, and to furnish notices of material adverse events.

77. Upon information and belief, Borrower has failed to provide required financial reporting and/or notices in accordance with the Loan Documents.

78. Any such failure constitutes an additional Event of Default under the Loan Documents (the "Reporting Defaults").

79. The Anticipated Repayment Date under the Loan Documents occurred on or about September 8, 2025. Ex. A at pg. 1.

80. Pursuant to the Loan Documents, the occurrence of the Anticipated Repayment Date without repayment of the Loan resulted in, among other things, an increase in the applicable interest rate and adjustments to Borrower's payment obligations. Ex. A at Section 1.1.4.

81. Borrower has failed to comply with its payment obligations following the

Anticipated Repayment Date, including the continued failure to make required Monthly Debt Service Payments.

82. The Loan has not reached its contractual Maturity Date, which is September 8, 2026. Plaintiff does not allege a maturity default and instead relies upon the Events of Default set forth herein, including the Monetary Defaults, Insurance Default, Reimbursement Default, Reserve Defaults, Tax Defaults, Reporting Defaults, Municipal and Water Defaults, Judgment Defaults, and other defaults under the Loan Documents.

83. Each of the Events of Default described herein—including, without limitation, the Monetary Defaults, Insurance Default, Reimbursement Default, Reserve Defaults, Tax Defaults, and Reporting Defaults—has occurred and continues to exist.

84. Borrower has failed to pay the required water charges, sewer rents, levies, imposts, and other charges imposed by the St. Paul, as required under the Loan Documents.

85. Each such failure constitutes an Event of Default pursuant to Section 1.1.3(d) of the Loan Agreement. *See* Ex. A.

86. Any such failure to pay water charges, sewer rents, or other charges when due constitutes an additional Event of Default under the Loan Documents (the "Municipal and Water Defaults")

87. Borrower has also failed to pay judgments imposed on Milwaukee Property.

88. Each such failure constitutes an Event of Default pursuant to Section 3.17 of the Loan Agreement. Ex A.

89. Any such failure to pay judgments when due constitutes an additional Event of Default under the Loan Documents (the "Judgment Defaults").

90. In addition, Borrower has failed to perform other covenants and obligations under

-18-

the Loan Documents, the full extent of which will be established through discovery, and each such failure constitutes a separate Event of Default thereunder.

91. By reason of the foregoing Events of Default, Lender is entitled to exercise any and all rights and remedies available under the Loan Documents and applicable law, including, without limitation, acceleration of the Debt and foreclosure of the Mortgages and related security interests.

92. On or about March 18, 2026, Plaintiff sent Borrower a Notice of Default, Demand, and Acceleration (the "Notice of Default and Demand"), advising Borrower of the numerous Events of Default, including the Monetary Defaults, Insurance Default, and Reimbursement Default. A true and correct copy of the Notice of Default and Demand is attached hereto as **Exhibit Q**, and its terms are expressly incorporated herein by reference.

93. On or about March 19, 2026, Plaintiff sent Borrower an additional Notice of Default, Demand for Payment, and Notice Regarding Application of Reserve Funds (the "Notice Regarding Reserve Funds"), advising Borrower, once again, of the numerous Events of Default, including the Monetary Defaults, Insurance Default, and Reimbursement Default. In addition, Plaintiff also advised Borrower of the Acceleration of the Indebtedness, Demand for Payment, Demand for Evidence of Compliant Insurance, and Notice of Application of Reserve Funds. A true and correct copy of the Notice Regarding Reserve Funds is attached hereto as **Exhibit R**, and its terms are expressly incorporated herein by reference.

94. On about July 29, 2026, Plaintiff sent Borrower an additional Notice of Default Regarding Municipal Liens, Water Liens, and Judgments, and Demand for Payment (the "Notice Regarding Additional Defaults"), advising Borrower of numerous Events of Default, including the Municipal and Water Defaults and Judgment Defaults. A true and correct copy of the Notice Regarding Additional Defaults is attached hereto as **Exhibit S**, and its terms are expressly

incorporated herein by reference.

95. As of the date of this Complaint, Borrower has failed to cure any of the above-referenced Events of Default and remains indebted to Plaintiff for all outstanding principal, interest, costs, and expenses, including attorneys' fees, as provided under the Loan Documents.

96. As a result of the Events of Default described herein, and notwithstanding that the contractual Maturity Date has not yet occurred, Plaintiff has exercised its contractual right to accelerate the indebtedness pursuant to the Loan Documents.

97. The outstanding principal balance due and owing under the Note as of the date of this Complaint is $839,483.44, together with accrued interest, default interest, costs, protective advances, attorneys' fees, and all other amounts recoverable under the Loan Documents.

**E. Events of Default under the Guaranty**

98. Pursuant to the Guaranty, Guarantors irrevocably and unconditionally guaranteed the payment and performance of certain obligations of Borrower, including, without limitation, the "Guaranteed Obligations," as defined therein, and agreed to be liable as primary obligors with respect thereto. Ex. D at Sections 1.1 and 1.2.

99. The Guaranty provides that the Guaranteed Obligations include, among other things, losses, damages, costs, and expenses incurred by Lender arising from certain acts and omissions of Borrower and its affiliates, including, without limitation, the failure to maintain required insurance coverage, the misapplication or conversion of Rents or other funds, the failure to pay taxes when due under certain circumstances, and other specified "bad acts." *Id.* at Section 1.2.

100. The Guaranty is an irrevocable, absolute, unconditional, continuing guaranty of payment and performance and not merely a guaranty of collection. *Id.* at Section 1.3.

101. As set forth above, Borrower failed to maintain required insurance coverage for the

-20-

Mortgaged Property beginning in or about November 2024.

102. Upon information and belief, Borrower's failure to maintain required insurance coverage under the Loan Documents, including any failure to pay premiums when due despite the availability of cash flow from the Mortgaged Property, constitutes a trigger of Guarantor liability under the Guaranty.

103. As further set forth above, Lender was required to obtain force-placed insurance coverage as a result of Borrower's failure to satisfy its obligations under the Loan Documents.

104. To the extent Borrower failed to properly apply, segregate, or use Mortgaged Property revenues or other funds in accordance with the Loan Documents, including, without limitation, failing to fund required reserves or pay required expenses, such conduct constitutes additional triggering events giving rise to liability under the Guaranty.

105. In addition, and as set forth above, Borrower has also failed to pay both municipal and water liens on Ramsey Property and numerous judgments on Milwaukee Property.

106. The Guaranty provides that Guarantors shall not allow any lien or judgment to exist upon the Mortgaged Property. *Id.* at Section 5.3.

107. The Guaranty further provides that Guarantors are jointly and severally liable for all losses, damages, costs, and expenses incurred by Lender resulting from such acts and omissions, including attorneys' fees and enforcement costs. *Id.* at Section 2.5.

108. In addition, pursuant to the Guaranty, Guarantors are obligated to pay any Guaranteed Obligations immediately upon demand by Lender, without the necessity of Lender first pursuing Borrower or any collateral. *Id.* at Section 1.6.

109. Lender has made, or is entitled to make, demand upon Guarantors for payment of the Guaranteed Obligations arising from the foregoing acts and omissions. *Id.*

-21-

110. Guarantors have failed and/or refused to pay the Guaranteed Obligations following such demand.

111. By reason of the foregoing, Guarantors are in default under the Guaranty and are liable to Lender for all Guaranteed Obligations, the full amount of which will be proven at trial.

112. The Guaranteed Recourse Obligations include, among other obligations for which Borrower becomes personally liable under Section 9.4 of the Loan Agreement, all Losses incurred by Plaintiff arising from Borrower's misapplication, misappropriation, diversion, or conversion of Rents and other Mortgaged Property revenues following the occurrence of one or more Events of Default.

113. As alleged herein, Borrower committed multiple Events of Default under the Loan Documents, including but not limited to: (a) failure to make required Monthly Debt Service Payments beginning in or about November 2025 and continuing thereafter; and (b) failure to deposit, safeguard, and properly apply Rents and other Mortgaged Property revenues following the occurrence of an Event of Default, including failures relating to reserve accounts and cash management requirements under the Loan Documents.

114. Borrower's withholding, diversion, and failure to properly deposit Rents and other Mortgaged Property revenues after the occurrence of an Event of Default constitutes a recourse-triggering event under Section 9.4(b)(ii)) of the Loan Agreement, thereby rendering such Losses personal obligations of Borrower and Guaranteed Recourse Obligations under the Guaranty. Ex. A (Loan Agreement) at § 9.4(b)(ii); Ex. E (Guaranty).

115. Pursuant to the express terms of the Guaranty, the Guarantors are jointly and severally liable for all Guaranteed Recourse Obligations arising from such conduct, including Losses, enforcement costs, and attorneys' fees. Ex. E (Guaranty) at 1–2.

-22-

116. Despite Plaintiff's demands, the Guarantors have failed to pay or otherwise satisfy the Guaranteed Recourse Obligations as required by the Guaranty.

117. Accordingly, the Guarantors are in default under the Guaranty and are personally liable to Plaintiff for all Guaranteed Recourse Obligations, including all Losses arising from Borrower's post-default misapplication of Rents and all costs and expenses incurred by Plaintiff in enforcing its rights

**F. Agreed upon Remedies for Borrower's Defaults**

118. The Loan Agreement, Mortgages, Guaranty, and other Loan Documents expressly set forth the rights and remedies available to Lender upon the occurrence and continuation of an Event of Default (collectively, the "Remedies").

119. Pursuant to the Loan Documents, upon the occurrence and continuation of an Event of Default, Lender is entitled, at its option and without notice or demand, to declare the entire outstanding principal balance of the Loan, together with all accrued interest and all other amounts due thereunder, immediately due and payable (the "Acceleration Remedy").

120. Upon acceleration, all Obligations, including principal, interest (including default interest), protective advances, costs, and expenses, become immediately due and payable by Borrower.

121. Pursuant to the Loan Documents, upon the occurrence and continuation of an Event of Default, Lender is entitled to institute proceedings to foreclose its liens against the Mortgaged Property and to cause the Mortgaged Property to be sold in accordance with applicable law (the "Foreclosure Remedy").

122. In connection with such foreclosure, Lender is entitled to pursue its remedies against the Mortgaged Property and any other collateral in such order and manner as Lender may elect, without being required to marshal assets or proceed against any particular collateral first.

-23-

Ex. A at Section 8.14.

123.    The Loan Documents further provide that, upon the occurrence and continuation of an Event of Default, Lender is entitled to enforce its assignment of leases and rents, including revoking Borrower's license to collect and use Rents, collecting all Rents directly, and applying such Rents to the payment of the Debt (the "Rents Remedy").

124.    In addition, Lender is entitled to seek the appointment of a receiver to take possession of the Mortgaged Property, manage the Mortgaged Property, collect Rents, and apply such Rents to the payment of the Debt, without regard to the adequacy of the security or the solvency of Borrower (the "Receiver Remedy").

125.    The Loan Documents further authorize Lender to enter upon the Mortgaged Property, take possession thereof, and operate and manage the Mortgaged Property, including collecting and applying Rents and revenues, upon the occurrence and continuation of an Event of Default.

126.    The Mortgage and Loan Agreement also permit Lender, upon an Event of Default, to make advances to protect its interest in the Mortgaged Property, including, without limitation, the payment of taxes, insurance premiums, and other costs and expenses, all of which advances become part of the Debt and bear interest at the contractually specified rate (the "Protective Advances Remedy").

127.    The Loan Documents further provide that Lender may apply all sums collected, including Rents and other proceeds, to the Obligations in such order and priority as Lender may determine in its discretion.

128.    In addition to the foregoing, the Mortgage expressly provides that Lender may pursue all rights and remedies concurrently or successively and may take action to enforce the

Loan Documents without waiving any other rights or remedies (the "Cumulative Remedies Provision").

129. Pursuant to the Guaranty, Guarantors irrevocably and unconditionally guaranteed certain obligations of Borrower, including, without limitation, losses, damages, costs, and expenses arising from specified acts and omissions of Borrower (the "Guaranty Remedy").

130. The Guaranty further provides that Guarantors are liable as primary obligors for such Guaranteed Obligations and are required to pay the same immediately upon demand by Lender, without requiring Lender first to pursue Borrower, the Mortgaged Property, or any other collateral.

131. The Guaranty also entitles Lender to recover all enforcement costs and expenses, including reasonable attorneys' fees, incurred in connection with the enforcement of the Guaranty and the preservation of Lender's rights (the "Guaranty Enforcement Remedy").

132. The remedies provided in the Loan Documents are cumulative and not exclusive, and Lender may exercise any one or more of such remedies simultaneously or in such order as Lender may determine in its sole discretion.

133. By reason of the Events of Default described herein, Lender is entitled to exercise any and all of the foregoing Remedies, together with all other rights and remedies available at law and in equity.

134. By reason of Borrower's Events of Default and recourse-triggering conduct, the outstanding principal balance now due and owing to Plaintiff under the Loan Documents as of the date of this Complaint is $839,483.44, together with default interest, costs, advances, attorneys' fees, and other charges accruing daily.

135. Despite demand, Defendants have failed and refused to cure the Events of Default,

surrender control of Mortgaged Property revenues, or satisfy the Obligations.

136. During the pendency of this action, Plaintiff may be required to advance sums for taxes, insurance, utilities, repairs, and other charges affecting the Mortgaged Property, and Plaintiff is entitled to recover all such advances as additional secured indebtedness under the Mortgages.

137. Upon information and belief, all Defendants named herein claim or may claim an interest in the Mortgaged Property subordinate to Plaintiff's lien.

138. Upon information and belief, all Defendants named herein, including without limitation Sureka Levette Davis, the City of Saint Paul, the City of Milwaukee, Ford Consumer Finance Company, Inc., and Educators Credit Union, claim or may claim certain interest(s) in the Mortgaged Property that are subordinate, subject, and inferior to Plaintiff's liens and security interests.

139. No additional persons or entities are known to claim any interest in the Mortgaged Property other than those named as Defendants.

140. Immediate judicial intervention, including foreclosure and the appointment of a receiver, is necessary to prevent further impairment of the Mortgaged Property and Plaintiff's collateral.

## COUNT I
### FORECLOSURE OF MILWAUKEE AND RAMSEY MORTGAGES – AGAINST BORROWER

141. Plaintiff repeats, realleges, and incorporates by reference all preceding paragraphs as though fully set forth herein.

142. Plaintiff is the lawful mortgagee and the holder in due course of the Note and Mortgages, together with all amendments, assignments, and modifications thereof, by virtue of valid written assignments.

143. Borrower is the record owner of the Mortgaged Property described herein and in

-26-

Exhibits C-1 and C-2, as modified by the recorded partial releases referenced herein.

144. The Mortgages were duly recorded and constitute first priority liens against the Mortgaged Property, together with all fixtures, Rents, issues, profits, and appurtenances thereto.

145. Borrower has materially defaulted under the Loan Documents by failing to perform its obligations thereunder, including, without limitation:

a) failure to make required Monthly Debt Service Payments beginning in or about November 2025 and continuing thereafter;

b) failure to maintain required insurance coverage for the Mortgaged Property beginning in or about November 2024, resulting in Lender obtaining force-placed insurance;

c) failure to reimburse Lender for protective advances, including insurance premiums;

d) failure to fund required reserve accounts in accordance with the Loan Documents; and

e) failure to comply with other covenants and obligations under the Loan Documents.

146. By reason of the foregoing Events of Default, Plaintiff has exercised its contractual right to accelerate the indebtedness secured by the Mortgages notwithstanding that the contractual Maturity Date has not yet occurred.

147. Pursuant to the Mortgages and the Loan Documents, Plaintiff is entitled to foreclose its liens against the Mortgaged Property and to have the Mortgaged Property sold in accordance with applicable law in order to satisfy the indebtedness.

148. The Mortgages include an absolute assignment of leases and rents and grant Borrower only a revocable license to collect and use such Rents, which license is revocable upon the occurrence and continuation of an Event of Default.

149. By reason of the Events of Default, Plaintiff is entitled to enforce its rights with respect to the Rents generated by the Mortgaged Property, including revoking Borrower's license

-27-

to collect Rents, directing tenants to remit Rents to Plaintiff or its designee, and applying such Rents to the indebtedness secured by the Mortgages.

150.   Pursuant to the Mortgages and the Loan Documents, Plaintiff is further entitled to the appointment of a receiver to take possession of the Mortgaged Property, collect Rents, manage and operate the Mortgaged Property, and preserve the value of the collateral during the pendency of this action, without regard to the adequacy of the security or the solvency of Borrower.

151.   Upon information and belief, Defendants Davis, Saint Paul, Milwaukee, Ford Consumer, and Educators claim or may claim certain interest(s) in portions of the Mortgaged Property. Any such interests are subordinate and inferior to Plaintiff's Mortgage liens and security interests and should be foreclosed and extinguished by judgment entered in this action.

152.   Defendants Davis, Saint Paul, Milwaukee, Ford, and Educators claim or may claim rights, titles, estates, liens, security interests, judgments, encumbrances, or other interests in portions of the Mortgaged Property. Specifically, upon information and belief:

a)   Defendant Davis may claim a judgment lien against portions of the Milwaukee Property;

b)   Defendant Saint Paul may claim municipal, water, sewer, assessment, or other statutory liens affecting portions of the Ramsey Property;

c)   Defendant Milwaukee may claim municipal, judgment, assessment, or other statutory liens affecting portions of the Milwaukee Property;

d)   Defendant Ford, and its unknown successors and assigns, may claim an interest by virtue of that certain Mortgage dated July 16, 1996 and recorded September 9, 1996 as Document No. 7262486 in the Milwaukee County Register of Deeds affecting 5747 North 40th Street, Milwaukee, Wisconsin; and

e)   Defendant Educators may claim an interest by virtue of that certain Mortgage dated May 17, 2012 and recorded May 29, 2012 as Document No. 10121458 in the Milwaukee County Register of Deeds affecting 4514 North 46th Street, Milwaukee, Wisconsin.

Any such interests are subordinate, subject, and inferior to Plaintiff's rights, liens, and security

interests under the Loan Documents and Mortgages and should be foreclosed and extinguished by the judgment entered herein.

153. Plaintiff demands that Defendants, and all persons claiming by, through, or under them, including any subordinate lienholders and all persons whose interests arose subsequent to the filing of a notice of pendency, be barred and foreclosed of all right, title, interest, lien, and equity of redemption in and to the Mortgaged Property, except only such rights as may be preserved by applicable law.

154. Plaintiff further requests a determination of the validity, extent, priority, and enforceability of the interests asserted by Davis, Saint Paul, Milwaukee, Ford, and Educators, and a declaration that any such interests are junior and subordinate to Plaintiff's liens and security interests.

155. Plaintiff has not commenced any other action or proceeding to recover any part of the mortgage indebtedness, except as permitted by law and the Loan Documents.

156. No other action or proceeding has been brought to recover any other portion of the mortgage indebtedness described herein.

157. Plaintiff reserves its right to pursue a deficiency judgment against Borrower and any other liable parties for any amount remaining due after the foreclosure sale of the Mortgaged Property and the application of all proceeds thereto, to the fullest extent permitted by law.

**COUNT II**
**FORECLOSURE OF SECURITY INSTRUMENT/UCC COLLATERAL – AGAINST BORROWER**

158. Plaintiff repeats, realleges, and incorporates by reference all preceding paragraphs as though fully set forth herein.

159. In connection with the Loan, Borrower executed and delivered the Mortgages and other Loan Documents, pursuant to which Borrower granted to Plaintiff a valid, enforceable, and

-29-

continuing security interest in all personal property, fixtures, accounts, Rents, contract rights, and other collateral described therein (collectively, the "Collateral").

160. The Mortgages constitute, and were intended to constitute, "security agreements" under the Uniform Commercial Code, granting Plaintiff a first priority security interest in the Collateral, and further operates as a fixture filing in the applicable real estate records.

161. Plaintiff has taken all actions necessary to perfect its security interests in the Collateral, including, without limitation, the filing of Uniform Commercial Code financing statements and related continuation statements in the appropriate jurisdictions.

162. By reason of Borrower's Events of Default, as alleged herein, Plaintiff is entitled to exercise all rights and remedies of a secured party under the Uniform Commercial Code and the Loan Documents with respect to the Collateral, including, without limitation, the right to take possession of, foreclose upon, and dispose of the Collateral.

163. Pursuant to the Loan Documents and applicable law, Plaintiff is entitled to have the Collateral sold in connection with the foreclosure of the Mortgaged Property, either together with the real property in a single unified sale or separately, in such order and manner as Plaintiff may elect.

164. In addition, Plaintiff is entitled to collect and apply all proceeds of the Collateral, including Rents, accounts, and other income, to the payment of the Debt in such order and priority as provided in the Loan Documents.

165. No person or entity has any lien on or interest in the Collateral that is prior or superior to Plaintiff's security interests, except as otherwise reflected in the public record.

166. By reason of the foregoing, Plaintiff is entitled to judgment authorizing the foreclosure, disposition, and sale of the Collateral, and the application of the proceeds thereof to

the indebtedness secured by the Loan Documents, together with such other relief as the Court deems just and proper.

**COUNT III**
**<u>APPOINTMENT OF RECEIVER</u>**

167. Plaintiff repeats, realleges, and incorporates by reference all preceding paragraphs as though fully set forth herein.

168. Borrower has committed and continues to commit multiple Events of Default under the Loan Documents, including, without limitation: (a) failure to make required Monthly Debt Service Payments beginning in or about November 2025 and continuing thereafter; (b) failure to maintain required insurance coverage, resulting in Plaintiff obtaining force-placed insurance; (c) failure to reimburse Plaintiff for protective advances; (d) failure to fund required reserves; and (e) failure to comply with other covenants concerning the collection, handling, and application of Rents and other revenues of the Mortgaged Property.

169. Pursuant to the express terms of the Mortgages, Borrower granted Plaintiff an absolute assignment of leases and Rents as additional collateral, subject only to a revocable license permitting Borrower to collect and use such Rents prior to an Event of Default.

170. The Mortgage further provides that, upon the occurrence and continuation of an Event of Default, Plaintiff is entitled to revoke Borrower's license to collect and use Rents, to take possession of the Mortgaged Property, to collect all Rents, and to seek the appointment of a receiver, without notice, without regard to the adequacy of the security, and without regard to the solvency of Borrower or any guarantor.

171. Upon information and belief, following the occurrence of the Events of Default, Borrower has failed to surrender control of the Mortgaged Property's income stream and has misapplied, diverted, or failed to properly apply Rents and other revenues of the Mortgaged

Property in accordance with the Loan Documents, or otherwise failed to account for such funds.

172. By reason of the foregoing, Plaintiff's collateral, including the Rents and income generated by the Mortgaged Property, is at risk of ongoing waste, diversion, and dissipation, thereby impairing Plaintiff's security.

173. Under the Loan Documents, Plaintiff is entitled to exercise exclusive control over all Rents and Mortgaged Property revenues following an Event of Default, and Borrower no longer has the right to collect, retain, or use such funds except as permitted by Plaintiff.

174. The appointment of a receiver is necessary to preserve and protect the Mortgaged Property and Plaintiff's collateral, to prevent further waste or diversion of Rents, to ensure proper management and operation of the Mortgaged Property, and to collect and apply all Rents and revenues in accordance with the Loan Documents during the pendency of this action.

175. Plaintiff is entitled to the immediate appointment of a receiver, pursuant to Rule 66 of the Federal Rules of Civil Procedure, 28 U.S.C. § 754, and this Court's inherent equitable powers. The appointment of a receiver is further warranted by the express terms of the Loan Documents, the existence of ongoing Events of Default, the risk of loss, waste, and dissipation of the Mortgaged Property and its income stream, and the inadequacy of legal remedies.

176. Absent the appointment of a receiver, Plaintiff will suffer continuing and irreparable harm, including the loss, diversion, or misapplication of Rents and diminution in the value of the Mortgaged Property, for which there is no adequate remedy at law

## COUNT IV
## BREACH OF CONTRACT – AGAINST BORROWER

177. Plaintiff repeats, realleges, and incorporates by reference all preceding paragraphs as though fully set forth herein.

178. The Loan Agreement, Note, Mortgages, and other Loan Documents constitute

-32-

valid, binding, and enforceable agreements between Plaintiff and Borrower.

179. Pursuant to the Loan Documents, Borrower expressly agreed, among other things, to:

   a. make timely payments of principal and interest in accordance with the terms of the Note;

   b. maintain insurance coverage for the Mortgaged Property;

   c. fund required reserve accounts;

   d. properly collect, safeguard, and apply Rents and other revenues of the Mortgaged Property; and

   e. perform all other obligations and covenants set forth in the Loan Documents.

180. Borrower has materially breached the Loan Documents by failing to perform its obligations thereunder, including, without limitation:

   a) failing to make required Monthly Debt Service Payments beginning in or about November 2025 and continuing thereafter;

   b) failing to maintain required insurance coverage for the Mortgaged Property, resulting in Plaintiff obtaining force-placed insurance;

   c) failing to reimburse Plaintiff for protective advances, including insurance premiums;

   d) failing to fund required reserves;

   e) failing to prevent the recording of the municipal and water liens referenced herein to be recorded against the Ramsey Property;

   f) failing to prevent the recording of the judgments referenced herein to be recorded against the Milwaukee Property; and

   g) failing to comply with other covenants and obligations under the Loan Documents.

181. By reason of Borrower's breaches and the Events of Default described herein, Plaintiff has exercised its contractual right to accelerate the Loan pursuant to the Loan Documents, and the entire unpaid indebtedness is immediately due and payable.

-33-

182. Borrower has failed and refused to pay the Debt when due.

183. As a direct and proximate result of Borrower's breaches, Plaintiff has suffered damages in an amount to be determined at trial, including, without limitation, all amounts due under the Loan Documents, together with interest, protective advances, costs, and attorneys' fees.

184. Plaintiff is entitled to recover a money judgment against Borrower for the full amount of the Debt, to the fullest extent permitted by law, in addition to and independent of its rights to foreclose the Mortgages and enforce its security interests.

## COUNT V
## BREACH OF GUARANTY – AGAINST GUARANTORS

185. Plaintiff repeats, realleges, and incorporates by reference all preceding paragraphs as though fully set forth herein.

186. Pursuant to the Guaranty, Guarantors executed and delivered a valid, binding, and enforceable agreement in favor of Plaintiff, pursuant to which Guarantors irrevocably and unconditionally guaranteed the payment and performance of the Guaranteed Obligations, as defined therein.

187. The Guaranty constitutes a continuing, absolute, and unconditional guaranty of payment and performance, and Guarantors agreed to be liable as primary obligors with respect to the Guaranteed Obligations.

188. Pursuant to the terms of the Guaranty, upon the occurrence of specified acts and omissions of Borrower, including, without limitation, failures relating to insurance, application of Rents, payment of certain expenses, and other "bad acts," Guarantors became liable for resulting losses, damages, costs, and expenses incurred by Plaintiff.

189. As alleged herein, Borrower committed multiple acts and omissions that trigger liability under the Guaranty, including, without limitation:

-34-

a) failure to maintain required insurance coverage;

b) failure to pay required obligations and properly apply Mortgaged Property revenues;

c) failures relating to the handling and use of Rents and other funds; and

d) other defaults and conduct giving rise to Guaranteed Obligations under the Guaranty.

190. By reason of the foregoing, Plaintiff has incurred losses, damages, costs, and expenses, including, without limitation, protective advances, enforcement costs, and attorneys' fees, that constitute Guaranteed Obligations under the Guaranty.

191. Pursuant to the express terms of the Guaranty, Guarantors are obligated to pay such Guaranteed Obligations immediately upon demand by Plaintiff, without the necessity of Plaintiff first pursuing Borrower or any collateral.

192. Plaintiff has made, or is entitled to make, demand upon Guarantors for payment of the Guaranteed Obligations.

193. Guarantors have failed and/or refused to pay the Guaranteed Obligations in accordance with the terms of the Guaranty.

194. By reason of the foregoing, Guarantors are in breach of the Guaranty and are liable to Plaintiff for all Guaranteed Obligations, together with interest, costs, and attorneys' fees, the full amount of which will be proven at trial.

195. Plaintiff has been damaged as a result of Guarantors' breach of the Guaranty.

**WHEREFORE**, Plaintiff respectfully demands judgment against Defendants as follows:

**A.     On Count I (Foreclosure of Mortgages – Against Borrower):**

1. Adjudging that Borrower, the Guarantors, Davis, Saint Paul, Milwaukee, Ford, Educators, and/or all persons, by, through, or under them, be forever barred and foreclosed of all right, title, interest, lien, and equity of redemption in and to the Mortgaged Property and all improvements, fixtures, Rents, and appurtenances thereto;

2. Adjudging that the interests, liens, Mortgages, judgments, assessments, and claims asserted or that may be asserted by Davis, Saint Paul, Milwaukee, Ford, and Educators are subordinate and inferior to Plaintiff's Mortgages and security interests and are foreclosed, terminated, and extinguished upon entry of judgment and completion of the foreclosure sale;

3. Directing that the Mortgaged Property be sold at foreclosure sale in accordance with applicable law and that the proceeds thereof be applied as provided in the Loan Documents;

4. Directing the payment to Plaintiff of all amounts due and owing under the Loan Documents, including, without limitation, unpaid principal, accrued interest, default interest, protective advances, costs, expenses, and attorneys' fees;

5. Adjudging that all leases, Rents, income, and other revenues derived from the Mortgaged Property are collateral for the Loan and properly payable to Plaintiff following the occurrence of the Events of Default;

6. Granting Plaintiff the right to enforce its assignment of leases and Rents, including without limitation the right to collect and apply such Rents to the indebtedness; and

7. Granting such other and further relief as the Court deems equitable and just.

**B.** **On Count II (Foreclosure of Security Instrument / UCC Collateral – Against Borrower):**

1. Adjudging that Plaintiff holds a valid, perfected, and first-priority security interest in the Collateral;

2. Directing that the Collateral be sold, foreclosed upon, or otherwise disposed of in accordance with the Uniform Commercial Code and applicable law, either together with the Mortgaged Property or separately, in Plaintiff's discretion;

3. Barring and foreclosing all Defendants from any right, title, interest, or equity of redemption in and to the Collateral;

4. Directing that the proceeds of any disposition of the Collateral be applied to the indebtedness secured by the Loan Documents in such order as permitted therein; and

5. Granting such other and further relief as the Court deems equitable and just.

**C.** **On Count III (Appointment of Receiver):**

1. Appointing, pursuant to Rule 66 of the Federal Rules of Civil Procedure, 28 U.S.C. § 754, and the Court's equitable powers, a receiver to immediately take

-36-

possession of the Mortgaged Property;

2. Authorizing such receiver to manage, operate, maintain, and preserve the Mortgaged Property;

3. Authorizing such receiver to collect, receive, safeguard, and apply all Rents, issues, profits, and other income derived from the Mortgaged Property in accordance with the Loan Documents and orders of this Court;

4. Authorizing such receiver to take all actions necessary to protect and preserve the value of the Mortgaged Property and Plaintiff's collateral; and

5. Granting such other and further relief as the Court deems equitable and just.

**D. On Count IV (Breach of Contract – Against Borrower):**

1. Entering judgment in favor of Plaintiff and against Borrower for the full amount of the Debt, including, without limitation, all unpaid principal, accrued interest, default interest, protective advances, costs, expenses, and attorneys' fees;

2. Adjudging that Borrower is personally liable to Plaintiff for such amounts to the fullest extent permitted by law; and

3. Granting such other and further relief as the Court deems just and proper.

**E. On Count V (Breach of Guaranty – Against Guarantors):**

1. Entering judgment in favor of Plaintiff and against Guarantors, jointly and severally, for all Guaranteed Obligations under the Guaranty, including, without limitation, all losses, damages, costs, expenses, protective advances, enforcement costs, and attorneys' fees recoverable thereunder;

2. Adjudging that such obligations are immediately due and payable and enforceable against Guarantors as primary obligors; and

3. Granting such other and further relief as the Court deems just and proper.

**F. Deficiency and General Relief:**

1. Adjudging that Plaintiff is entitled to a deficiency judgment against Borrower and any other liable parties for any amount remaining due after application of the proceeds of the foreclosure sale and any disposition of the Collateral, to the fullest extent permitted by law;

2. Awarding Plaintiff its costs, disbursements, and reasonable attorneys' fees incurred in connection with this action; and

3. Granting Plaintiff such other, further, and different relief as the Court deems just, proper, and equitable.

Respectfully submitted,

Date: July 29, 2026

By: /s/ *Stephanie Jones*
Stephanie Jones (Bar No. 1113627)
Gordon Rees Scully Mansukhani, LLP
8383 Greenway Boulevard, Suite 608
Middleton, WI 53562
Tel: (312) 619-4934
sfjones@grsm.com
Samuel Smith (Bar No. 1130789)
500 W. Silver Spring Drive, K200
Glendale, WI 53217
Tel: 414.488.3999
smsmith@grsm.com

By: /s/ *Ari M. Charlip*
Ari M. Charlip (MI Bar No. P57285)
Luke D. Wolf (MI Bar No. P81932)
*Admission Forthcoming*
Gordon Rees Scully Mansukhani, LLP
37000 Woodward Avenue, Suite 225
Bloomfield Hills, MI 48304
(313) 756-6404 | (313) 406-7373 (fax)
acharlip@grsm.com
lwolf@grsm.com

*Counsel for Plaintiff Wilmington Trust, N.A., as Trustee, for the Benefit of the Holders of B2R Mortgage Trust 2015-2 Mortgage Pass-Through Certificates*